UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SHAQUILLE LEE | Case No. 21-cr-10230-RGS |

### SENTENCING MEMORANDUM OF SHAQUILLE LEE

### INTRODUCTION

"Whoever knowingly violations subsection. . . (g)[1] . . . of section 922 shall be fined as provided in this title, imprisoned not more than 10 years or both".

*18 U.S.C. § 924 (a)(2).*

*The defendant's recommendation*

NOW COMES THE Defendant, Mr. Shaquille Lee ("Mr. Lee" or "Lee") and upon his conviction of 18 U.S.C. § 922 (g)(1), Lee requests that this Court impose sentence of 3 years for the violation of the aforementioned statute.   His initial highlighting of the maximum sentence for his crime (of 10 years) is merely done to serve as a frame of reference to illustrate where his proposed sentence would sit on the sentencing spectrum.  We can ask why should Mr. Lee sit along the spectrum at 3 years, in lieu of half of the maximum sentence or even higher?   The answer would be that Mr. Lee presents to this Court with only one previous criminal conviction on his record (of note), and where he has never served a day of prison in his life.   Lee therefore presents to this Court as far removed from some sort of incorrigible repeat offender – not being one who has failed to appreciate the requisite life lessons after previous punishment. Furthermore and Lee, notwithstanding his present offense conduct, was otherwise a productive

member of society - holding the same full-time job for 4 years before he was arrested.  He also presents as a very supportive father (in all aspects) of 2 young children.  Lastly, his present crime did not involve any specific acts of violence against any community.  His ensuing sentence should therefore reflect all of those considerations.

The take away from the above presentation is that Mr. Lee is far from perfect, but he is far from incorrigible.  Because Lee is not perfect simply means that he is not without sin and so therefore he must atone.  However, Mr. Lee's present sin must be viewed against the backdrop of how he otherwise presents historically.  After viewing of the same, a harsher punishment of more than 3 years would not be warranted, as any higher sentence would remove him from the community for a period of time more reserved for those who present with more sin, and with an accompanying demand for more atonement.  As such, any sentence of more than 3 years would be *unreasonable*, as it would be greater than necessary to accomplish the goals of sentencing.[1]

*The government's recommendation*

As no surprise, the government's position on sentencing will attempt to place Lee much higher on the spectrum.  Their position however relies in no way upon Lee's lack of ever being incarcerated, let alone the fact that Lee appeared to be a hard-working and responsible parent.  Their request (above what Mr. Lee has recommended) will be exclusively based upon some questionable and unconvincing sentencing enhancement, which first has been advanced by the probation department.[2]

---

[1] Mr. Lee also relies upon his interpretation/calculation of the advisory guidelines, which he believes is set at a range of 37 to 46 months.  *See supra.*

[2] In addition to this sentencing enhancement, the government also does throw in for good measure all of the "unconvicted" crimes for where Mr. Lee enjoys the presumption of innocence – assault and battery at the Encore Casino (where they fail to mention that he was attacked first by a Mr. Keith Resende and allegedly pushed an officer during the break-up of the fight), and armed assault to murder (where again they also fail to mention that Lee was also attacked first by the same Mr. Resende).  However, and unless the government intends to prove to this Court that Lee doesn't enjoy innocence on these offenses and (more likely than not) committed these crimes, he would object to the Court relying upon them in aid of sentencing.

The sentencing enhancement upon which the government relies can be found in *paragraph 23* of the Final Presentence Report ("FPSR"), which alleges that Lee committed the present crime ***in connection with*** a previous crime, as part of some "common scheme or same course of conduct" – and therefore seeking to apply U.S.S.G. section 2K2.1   *See also probation's response to Lee's objection # 4 at pages 22-23 of the FPSR.*   If the government is successful in advancing probation's claim, then Lee would be facing an advisory guideline sentencing range of 57 to 71 months. *See FPSR at ¶74.*[3]

If the government is unsuccessful however, Mr. Lee's advisory guideline sentencing range would be 37 to 46 months – and where a low-end imposition would be consistent with Lee's recommended sentence of 3 years.  *See Lee's further objections 5-8 on pages 23-24 of the FPSR.*  To be sure, neither guideline calculation can be presumed to be reasonable, as it merely serves as the initial benchmark or starting point for the discussion on sentencing.  *Gall v. United States*, 552 U.S. 38, 49-50 (2007) (explaining the requirement of Courts to first properly calculate the guidelines, but also finds them merely advisory, mandating that a sentencing court no longer exclusively rely on them, but rather make an individualized assessment based on the facts presented and the other statutory factors).   However, and where the Court must first calculate the guideline range which is presently in dispute, Lee gives the following argument(s) to resolve it.

---

[3] The government also tries to claim that Mr. Lee would be at a range of 63 to 78 months because it "objects" to probation's belief that "racing" and "careless or reckless driving" are *similar* offenses.  If the Court believes that they are 2 totally different offense, then the "CWOF" which Mr. Lee received for racing a motor vehicle would place Mr. Lee into a category II.  Obviously Lee believes that both offenses are *similar* as logic would demand that if one is racing, one must also be careless in their operation of a vehicle.  By the same token, if one is racing, one "more likely than not" would be reckless in the operation of their motor vehicle as well.   Put plainly, Lee's criminal history is not a "II" but a "I", because Lee fails to see how both crimes cannot be interchanged for one another.  Whatever offense level computation the Court comes down at, he maintains (along with probation) that has a criminal history category of "I".

# ARGUMENT

## I.

### FIRST – FOR SECTION 2K2.1(b)(6)(B) TO APPLY, THE GOVERNMENT HAS TO PROVE THAT SHAQUILLE LEE COMMITTED ANOTHER FELONY OFFENSE – TO WIT: ARMED ASSAULT TO MURDER – AND THEY CANNOT

Upon review of the FPSR, we see that probation attempts to argue (and without objection) that Lee's possession of the weapon for which he plead guilty (a Glock 23, .40 caliber pistol) has a "special offense characteristic" – because this firearm was used in connection with another felony offense. *See ¶ 23 of the FPSR.* As a result they believe that U.S.S.G. § 2K2.1(b)(6)(B) would apply. *Id.* To appreciate what the First Circuit has said about all of this, Mr. Lee states the law on how this enhancement applies:

> "The enhancement applies [ ] if the court finds that the government proves 2 things by a preponderance of the evidence; one, that [Lee] committed *another* felony offense. . . . and two, that he possessed the firearm *in connection with that other offense*. . ."

*United States v. Rogers*, 17 F. 4th 229, 234 (1st Cir. 2021) (emphasis added).

To be sure, the felony offense was Armed Assault to Murder – a case that is pending in state court. *FPSR at 23.* The government has "at the 11th hour" seemed to have a different reason for why the enhancement applies – due to some allegation that Mr. Lee possessed the weapon in connection with streel-level drug distribution. *See government's memorandum at page 2.* However, probation specifically gave the government the opportunity to object to any of its' findings in the pre-sentence report, and the government never lodged an objection or suggested this alternative theory not contemplated by probation. *See addendum to the FPSR at page 21.* As a result, Mr. Lee objects to this alternative theory for why the enhancement applies not only on procedural grounds but also on equitable grounds as well – as Lee has not receive a fair opportunity to respond to the government's last-minute argument which should have been

4

brought to probation's attention.

Focusing exclusively upon probation's suggested factual basis for the enhancement (his alleged separate crime of Armed Assault to Murder) Lee suggests that the government will be unable to prove either element espoused under *Rogers*, that: 1) he committed an Armed Assault to Murder;  or 2) that he possessed the firearm in connection with that offense.

***Mr. Lee requests an evidentiary hearing should the government seek to prove that he was the perpetrator of this crime***

Mr. Lee claims that the government has NOT provided this Court with any evidence that Mr. Lee committed another felony offense.  As of present, they have only presented evidence of an indictment (demonstrating probable cause) but have not proven the offense by a preponderance of the evidence.  *Id. at ¶* 8.  Mr. Lee is not certain whether the government will seek to sustain this higher level of proof at the sentencing hearing, but if so, Mr. Lee would formally request an evidentiary hearing.  It is sound precedent that "the failure to ask the district court to convene an evidentiary hearing ordinarily spells defeat for a contention that one should be held".  *United States v. Cheal*, 389 F. 3d 35, 45 (1st Cir. 2004).   As of present, the Court has not been presented with evidence supporting that Mr. Lee committed Armed Assault to Murder. Should the government seek to argue at sentencing that he did to support the application of the aforementioned enhancement, Mr. Lee would request the Court to hear the evidence in support of the claim – by proffer or otherwise.[4]

---

[4] To be sure, Mr. Lee is not requesting some mini-trial in federal court to determine the merits of a state court indictment.  So long as the government provides the police reports and/or other information in its' possession which provides the grounds to believe that the charge is true, Lee would not object to the proffer.

5

***Assuming the government can establish its' burden that Lee committed this crime, they must also establish that he was not legally justified.[5]***

Should the government convince this Court that more likely than not Mr. Lee committed the crime of Assault to Murder, the government would also have to prove that Mr. Lee did not act in self-defense.  *See Commonwealth v. Domaingue*, 8 Mass. App. Ct. 228 n.3 (1979) ("Self-defense is the legal justification for conduct that would otherwise constitute a crime, such as assault, battery, or homicide were it not for the fact that its' purpose was to defend one's person from unlawful acts which may result in bodily harm").

To be sure, the facts (as Mr. Lee understands them), is that he is alleged to have shot 5 rounds at an occupant of another vehicle.  *See FPSR at paragraph 8.*  What this paragraph does not also state however, is that the person who was shot at ***first*** attempted to kill the shooter.  *See Lee's objection #2 at page 21.*  As such, and if Mr. Lee was the person who rang out the shots, the government would also have to show by a preponderance of the evidence that he had no defense to the crime available to him – namely self defense.

***Self-defense***

In order to prove that Mr. Lee did not act in self-defense, they would need to prove one of the following things:

1) That Mr. Lee did not reasonably believe he was being attacked;

2) That Mr. Lee did not do everything reasonable in the circumstances to avoid resorting to force;

3) That Mr. Lee used more force than was reasonably necessary in the circumstances;

*See Massachusetts Model Jury Instruction 9.260 (2009 edition)*

---

[5] To be transparent, Lee has more of a desire to challenge this aspect of the analysis than whether the government can prove "more likely than not" that Lee was the perpetrator in question.  However, but to get to this stage of the inquiry, the Court would necessarily have to receive a solid factual understanding of the case through their proffer. At this point in time, the government may not be interested in pursuing the crusade in total, so Mr. Lee will leave it up to them.

To just cut to the chase, and if the government is intent upon introducing evidence on this point, the facts would only demonstrate that Lee was a passenger in a vehicle which was under attack. The alleged perpetrator (Mr. Keith Resende) while driving a separate vehicle, engaged in a dangerous pursuit of the vehicle in which Mr. Lee was a passenger, and where the driver of Lee's vehicle was Ms. Jessica Araujo – a woman who was previously romantically involved with Resende. Stated another way, Mr. Lee was in a car minding his own business and not looking for any trouble when he gets set upon by Resende. We then see that Resende drives at Lee's vehicle in some sort of possessed rage down a public street (and on the wrong side of road), and then slams into Lee's vehicle at an extremely high rate of speed, and causing Lee's vehicle to spin and crash causing massive damage to it. Stated a third-way, if Resende does not utilize his vehicle as an instrument to inflict serious bodily harm or death, then Mr. Lee does not get charged with Armed Assault to Murder. The FPSR does not develop this issue in any sufficient detail – and perhaps they need not, but if the government wants this enhancement it should.

The argument therefore follows that since Mr. Lee could have been killed from Resende's attack, the vehicle utilized by Resende would amount to deadly force. *See e.g., McGrath v. Tavares*, 889 F. Supp. 2d. 157, 164-165 (2012) (Collins, M.J) (shots fired into a vehicle objectively reasonable on the grounds of self-defense, where the car was being driven in the direction where the shooter was standing). The FPSR (nor the government) has made any allegation, nor has it ever been disputed that Mr. Lee's alleged use of force was not justified either to protect himself, or the life of others (namely Ms. Araujo – perhaps the focus of Resende's rampage – or both). As such, the government would be unable to establish by a preponderance of the evidence prong 1 of the *Rogers* construct – that Mr. Lee committed another felony offense.

7

## II.

**SECOND- THE GOVERNMENT CANNOT PROVE THE FIREARM UPON WHICH LEE HAS PLEAD GUILTY IN POSSESSING - WAS POSSESSED *IN CONNECTION WITH* THE CRIME OF ARMED ASSAULT TO MURDER, OR PURSUANT TO SOME *COMMON SCHEME* OR *CRIMINAL COURSE OF CONDUCT* TO COMMIT THE SAME CRIME**

Under element 2 of the *Rogers* construct, the government must prove that Lee possessed his Glock 23 *in connection with* this other identified felony offense (Armed Assault to Murder). Mr. Lee fails to see the nexus between the two crimes. This is because and upon Lee's review of the FPSR in its entirety, probation merely concludes that:

> "[T]he defendant's illegal possession of the Glock 23. . . was part of the same course of conduct as his illegal possession of the firearm used to allegedly commit the Assault to Murder offense".

*Id.*

To be sure, there are NO facts which have been alleged in the FPSR to support this conclusion. Offenses are "part of the same course of conduct" if "sufficiently connected or related to each other" such that they are "part of a single episode, spree, or ongoing series of offenses". *See U.S.S.G. section 1B1.3 cmt. n.5 (B)(ii).* The factors to be considered "include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses". *Id.* When one of the above factors is absent, a strong presence of at least one of the other factors is required. *Id.* Lee states there are NO facts presented in the FPSR which speak to similarity and/or repetition between both offenses. Missing two out of the three factors cannot hardly compensate to allow the last factor (time interval) to control the day – assuming that the Court finds that the time interval was close. Here, all we know is that Mr. Lee was charged with shooting a weapon on one instance, and then months later found in possession of another weapon without the same use. Merely possessing 2 weapons is not enough as one weapon does not facilitate the possession of another. This is why the "other felony offense" has

8

to be something other than possession of a firearm. *See U.S.S.G. 2K2.1(13)(D)* ("If the defendant used or transferred one of such firearms in connection with another felony offense (i.e., **an offense other than a firearms possession** or trafficking offense) an enhancement under subsection (b)(6)(B) also would apply) (emphasis added).

In sum, where the FPSR merely alleges that 2K2.1 applies, NO facts are itemized in the FPSR which explains how these two crimes are part of a "single episode, spree, or ongoing series of offenses", and so therefore leaves the government to its proof. If the aforementioned enhancement does not apply, Lee contends that he would be a CHC 1 and with a final offense level of 21, which equates to a guideline calculation of 37 to 46 months. *See objection #8 at page 24 of the FPSR.* If the Court agrees, Mr. Lee is merely asking that, and after consideration of the 3553(a) sentencing factors, that it impose a sentence of 36 months finding it being no greater than necessary to accomplish the purpose of sentencing in this matter.

### III.

### APPLICATION OF 18 U.S.C. §3553

Consistent with the federal courts' long-standing deep concern for individualized sentencing, the Supreme Court has repeatedly affirmed *individualized* assessments which are accomplished by considering applicable 18 U.S.C. sec. 3553(a) factors in fashioning an appropriate sentence. *See Pepper v. United States*, 562 U.S. 476 (2011). Additionally, the sentencing court is not required to consider individually each of the Section 3553(a) factors before issuing a sentence, but rather take the factors in as a conglomerate or totality of the picture which Mr. Lee presents to this Court. *See e.g. United States v. Penn*, 601 F. 3d 1007, 1011 (10th Cir. 2010) (It is "enough that the district court considers section 3553(a) *en masse* and states its reasons for imposing a given sentence.") (emphasis added). Sentencing under section 3553(a) therefore requires the Court to start with the minimum sentence permissible and add only so

9

much additional punishment, if any, as is necessary to comply with Section 3553(a)'s purposes. *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). Mr. Lee asks this Court to take a view of who he is ***en masse*** in order to fashion the sentence that is appropriate to him and him alone. The personal characteristics of Mr. Lee are really what should take center stage when coming up with such an individualized sentence.

## **PERSONAL HISTORY AND CHARACTERISTICS OF MR. LEE**

*Who is Mr. Lee?*

Mr. Lee started out in his introduction highlighting exactly who he is because he believes it provides the strongest support on demonstrating his place on the sentencing spectrum, and we can glean it from his Final Pre-Sentence Report. Mr. Lee is a person who has not plagued the criminal justice system with acts which involve the fire-starting of violence and community disruptions. He is 29 years old and has never been sentenced to jail or prison before. He has only one previous conviction for a drug offense (at the age of 23) where he was given a 6 month probationary sentence out of the Cambridge District Court which was completed with success. *See FPSR at paragraph 36.* Actually, and were it not for this lone offense, Mr. Lee would not be a convicted felon, and he would not have found himself in the predicament he is presently in (at least in federal court).

Mr. Lee is also a father of two children, and based upon his family obligations, he not only knows how to find work but to keep it, for one reason and one reason alone – to support the needs of his respective children. The point is that Mr. Shaquille Lee is a person who does not lack in the areas of responsibility, determination, or effort. He is obviously a person with goals, as he managed to obtain a career at the age of 25, and where he has parlayed that into making over 50 dollars an hour by the time he was arrested. *Id. at* ¶ 67. To be sure, Mr. Lee is certified in various trades, including OSHA 10, OSHA 30, scaffolding, CPR and construction lifts. *Id at* ¶

10

65. He also is a high school graduate and attempted to further his studies at Fisher College until he had to drop out to be a parent. . *Id at* ¶ 64. The well-established background coming from Mr. Lee demonstrates a person who is: a) goal-oriented; b) has some degree of maturity since he has managed to stay out of jail until the present case; and finally c) demonstrates that he also has a fair modicum of self-worth. Again, all of this is demonstrated via his employment and the care that he provides for his children. Mr. Lee also encloses letters in aid-of-sentencing, not only from the mothers of his two children, but his own mother, as well as people who know Mr. Lee outside of the family bonds which he has created – in specific the people who have worked with Mr. Lee. *See letters of support attached hereto as an exhibit.*

## CONCLUSION

So who is Mr. Lee? He is a person who comes before the Court with an apparent issue with weapons. Has Lee ever been convicted of violent crimes involving a weapon in the past? No. Actually Mr. Lee has never been convicted of any violent crimes over the course of life, and today has not changed that assessment. But nonetheless, it would appear that Mr. Lee feels a need a keep a weapon close by, in case violence could be inflicted upon him. It's not an excuse but rather an acknowledgment which Mr. Lee now recognizes must change. Mr. Shaquille Lee is a prohibited person and he knows that he cannot possess a weapon such as a firearm, ever. If before Lee was sentenced on this case, he was given the message by judge after judge, and time and time again, but refused to listen, then of course a subsequent sentence which approaches perhaps half of the maximum sentence or even further along the spectrum would be appropriate. Mr. Lee asks the Court to consider and REJECT that such a harsh sentence is necessary under his particular circumstances. Mr. Lee does not present the worse of the worse, or even half-way there, and so therefore his sentence should not be reflective of the middle of the road on the spectrum (a sentence of 5 years of more).

July 14, 2022, will be the first time Mr. Lee is going to prison. For a "first-timer", he submits that where his crime did not involve any specific harm or violence to the community – still recognizing the risk which any gun poses to the same, he ask that the sentence reflect all of the above, and seeks 36 months.

                                    Respectfully Submitted,
                                    SHAQUILLE LEE
                                    By his Attorney,

                                    /s/ Gordon W. Spencer_____
                                    Gordon W. Spencer, Esq.
                                    BBO #630488
                                    945 Concord Street
                                    Framingham, MA 01701
                                    (508) 231-4822

July 12, 2022

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon all counsel of record this 12th day of July, 2022 via electronic transmission, and US Probation.

                _____/s/Gordon W. Spencer_____
                              Gordon W. Spencer